E-FILED
Wednesday, 02 February, 2005  02:35:20 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) CRIMINAL NO. 05-30008 |
| MANUEL CASTRO-REYES, | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS FOR MIRANDA VIOLATIONS**

The United States of America, by its attorneys, Jan Paul Miller, United States Attorney for the Central District of Illinois, and Esteban F. Sanchez, Assistant United States Attorney, and for its response in opposition to defendant's Motion to Suppress states as follows:

**INTRODUCTION**

1.  Defendant seeks to suppress statements he made to Special Agent Stuart A. Kutz of the Bureau of Immigration and Customs Enforcement, Department of Homeland Security (ICE), on December 6, 2004. Defendant alleges that his statements were the result of continued questioning by S/A Kutz after he had invoked his 5th Amendment right to remain silent.

2.  Defendant's Motion to Suppress is without merit. The evidence will show that defendant, after having asserted his right to remain silent, commenced a conversation with Special Agent Kutz without questioning or prompting by Kutz,

volunteered statements and subsequently knowingly and voluntarily waived his rights against self-incrimination.

## FACTS

3. On December 6, 2004, at approximately 2:15 p.m., Illinois State Police Trooper Steve Ent stopped a gray 1998 Chevrolet Suburban for improper lane usage on southbound Interstate 55 near the 90 mile marker in Springfield, Illinois. Illinois State Police Special Agent Tim Hansen also arrived on the scene. Special Agent Hansen asked the occupants in Spanish if they were illegally in the United States, to which the driver, Manuel Castro-Reyes, responded, that he and the passengers were all aliens illegally in the United States. At this time Trooper Ent had the Illinois State Police dispatcher contact the Springfield office of Immigration and Customs Enforcement (ICE) of the Department of Homeland Security.

4. Shortly thereafter, ICE Special Agents Stuart A. Kutz and Gerard Solberg arrived at the scene and after a few minutes transported Castro-Reyes and the other eleven occupants of the vehicle to the ICE office in Springfield for processing and further investigation. The party arrived at the ICE office at approximately 3:30 p.m.

5. Upon arriving at the Springfield ICE office, Manuel Castro-Reyes was advised of his constitutional rights as per Miranda; his Consular Communication Privileges, pursuant to Article 36 of the Vienna Convention; and given the "Advice of Rights-Retention of Witnesses" form by Special Agent Kutz. The advisement of rights was given in Spanish. Special Agent Kutz is fluent in Spanish. Castro-Reyes stated that

he understood his rights but refused to answer any questions at which time Special Agent Kutz stopped all communications with Castro-Reyes relating to the transportation of the illegal aliens.

6.  Special Agent Kutz then turned his attention to processing and questioning the other eleven passengers individually.

7.  At approximately 6:40 p.m., Special Agent Kutz approached Castro-Reyes for purposes of searching and inventorying any personal possessions he may have on his person, prior to placing him in a cell. Special Agent Kutz located $886.76 on Castro-Reyes. Immediately upon retrieving the currency, Castro-Reyes volunteered that he wanted to explain to Kutz why he was in possession of such a large sum of money and who the money belonged to and pointed to the cell where the other passengers were located.

8.  Special Agent Kutz interrupted Castro-Reyes and advised him that he (Kutz) could not speak to Castro-Reyes because Castro-Reyes had exercised his right to remain silent.  Special Agent Kutz asked Castro-Reyes if he now wanted to talk and if he was willing to waive his rights against self-incrimination. Castro-Reyes indicated that he was willing to waive his rights and talk to Special Agent Kutz. At 6:45 p.m., Special Agent Kutz retrieved the Waiver of Rights form, again read the form to Castro-Reyes in Spanish and Castro-Reyes signed the form waiving his right to remain silent.

9.  Castro-Reyes stated that he crossed the Mexican border in Arizona with the other eleven passengers and therefore he knew that they were illegally in the United States. Castro-Reyes also advised Special Agent Kutz that he agreed to drive the load

from Phoenix to St. Louis after the person Castro-Reyes was going to pay to transport him inland could not find a driver. According to Castro-Reyes, a man he identified as Armando Garcia, agreed to waive the $300 fee if Castro-Reyes drove the vehicle. Castro-Reyes stated that Garcia followed behind him with another load of illegal aliens headed for New York. Somewhere in Kansas, the two vehicles split up. Before splitting up, Garcia provided Castro-Reyes with $165.00 for expenses.

10. At the time of his arrest, Castro-Reyes had $86.76 left of the $165.00 provided by Garcia. In addition, he had $800. He claimed $100 belonged to him and the balance of $700 came from the other eleven passengers.

11. Castro-Reyes also stated that there was not enough seating for all passengers and that at least two passengers had to sit on the floor of the vehicle. He agreed that situation was dangerous.

## LEGAL ANALYSIS

12. In *Miranda v. Arizona*, 384 U.S. 436, 467 (1966), the Supreme Court held that under the Fifth Amendment, certain warnings must be given to a suspect prior to in-custody interrogation. Once a suspect invokes his Fifth Amendment right to counsel, law enforcement officers are required to cease any interrogation unless the suspect initiates further communication. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

13. The test is "whether a reasonable objective observer would have believed that the ...question[] claimed by [the defendant] to have been unlawful interrogation [was] in fact 'reasonably likely to elicit' an incriminating response. *United States v. Westbrook*, 125 F.3d 996, 1002 (7th Cir.1997). "Volunteered statements[, however,] of any

kind are not barred by the Fifth Amendment." *United States v. Briggs*, 273 F.3d 737, 740 (7th Cir.2001) (quoting *Miranda*, 384 U.S. at 478; *Westbrook*, 125 F.3d 16 1001); *see also Andersen v. Thieret*, 903 F.2d 526, 531 (7th Cir.1990) (holding that suspect's statement, "I stabbed her," which was not made in response to a question by the police, was a volunteered statement not subject to *Miranda*); *United States v. Jackson*, 189 F.3d 502, 511 (7th Cir.1999); *United States v. Krankel*, 164 F.3d 1046, 1050-51 (7th Cir. 1998).

14.     In *United States v. DeRobertis*, 771 F.2d 1015 (7th Cir. 1985), the defendant had been questioned by detectives twice, each time invoking his *Miranda* rights. Each time the detectives honored his request and ceased questioning him. Later, the defendant notified an officer that he wished to talk. The detectives in charge of the investigation were not at the police station but came later upon the defendant's request. If the suspect initiates a conversation with the police, they may ask further questions even though the suspect had previously invoked his right to counsel. *See also*, *United States v. McKinley*, 84 F.3d 904, 908 (7th Cir. 1996)(If a suspect invokes his right to counsel under *Miranda*, he is not subject to further interrogation until counsel is present or until the suspect himself initiates further discussions.)

15.     Here, Special Agent Kutz honored Castro-Reyes' request to remain silent. It was approximately two hours later that Special Agent Kutz approached Castro-Reyes to search him before putting him in a holding cell. The search revealed a large sum of currency which prompted Castro-Reyes to reconsider his situation. Castro-Reyes knew that his possession of a large sum of money is strong evidence of his involvement in the transportation of aliens for money and he decided to explain the circumstances of his

involvement in the transportation of the aliens. Nothing Special Agent Kutz did or said before or after the search could be reasonably interpreted to be "reasonably likely to elicit an incriminating response" from Castro-Reyes.

16.    Castro-Reyes voluntarily commenced his communication with Special Agent Kutz. Moreover, he knowingly and voluntarily waived his right against self-incrimination in writing and provided additional incriminating information to Special Agent Kutz. Castro-Reyes' 5th Amendment rights were not violated and his statements to Special Agent Kutz should not be suppressed.

## CONCLUSION

For the reasons stated above, the defendant's motion is without merit and his Motion to Suppress should be denied.

Respectfully Submitted,

JAN PAUL MILLER
UNITED STATES ATTORNEY


By:    s/Esteban F. Sanchez
Esteban F. Sanchez
Assistant United States Attorney
Illinois Bar No. 3123604
318 South 6th Street
Springfield, IL 62701
Telephone: (217) 492-4450
esteban.sanchez@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on February 2, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Douglas Beevers

                                        s/Esteban F. Sanchez
                                        Esteban F. Sanchez
                                        Assistant United States Attorney
                                        318 South Sixth Street
                                        Springfield, IL 62701
                                        (217) 492-4450
                                        Fax: (217) 492-4512
                                        esteban.sanchez@usdoj.gov