**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| -vs-  ) | Criminal No. 05-30008 |
| ) | |
| MANUEL CASTRO-REYES,  ) | |
| ) | |
| Defendant.  ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
OBJECTION TO THE REPORT AND RECOMMENDATION**

Comes now the United States of America, by Jan Paul Miller, United States Attorney for the Central District of Illinois, and Esteban F. Sanchez, Assistant U.S. Attorney, and for its Response in Opposition to Defendant's Objection to the Report and Recommendation of the Honorable Byron Cudmore, United States Magistrate Judge, states as follows:

1.   On February 15, 2005, after an evidentiary hearing, the Honorable Byron G. Cudmore, United States Magistrate Judge, issued his Report and Recommendation that this Court deny defendant's Motion to Suppress Statements.

2.   In his Report and Recommendation, Judge Cudmore detailed the relevant facts as testified to by Special Agent Stuart Kutz of the Bureau of Immigration and Customs Enforcement of the Department of Homeland Security

(ICE).  Judge Cudmore found Special Agent Kutz' testimony to be credible.

    3.    Judge Cudmore found that at approximately 4:00 pm on December 6, 2004, the defendant was read his Miranda rights in Spanish by Special Agent Kutz.  The defendant exercised his right to remain silent.  At which time, Special Agent Kutz ceased all questioning.

Judge Cudmore made the following specific finding of fact: "At or near 6:40 pm., Special Agent Kutz removed the Defendant from the ICE lockup.  Special Agent Kutz advised the Defendant he would be asking the Defendant certain booking/background information questions, such as name, date of birth, etc.  Thereafter, Special Agent Kutz conducted an inventory of Defendant's personal possessions.  Special Agent Kutz located $886.76 inside defendant's wallet." (Report and Recommendation, Paragraph 6.)

Special Agent Kutz reacted to finding such a large sum of money in the defendant's wallet and expressed the surprise by loudly using a common (and vulgar) Spanish slang term.  Then, as Judge Cudmore reported "Without questions asked by Special Agent Kutz, the Defendant thereafter made statements as to why he was in possession of the money found." (Report and Recommendation, Paragraph 7.)

"Special Agent Kutz repeatedly attempted to stop the Defendant's volunteered statements." (Report and recommendation, Paragraph 8.) The defendant was again advised of his Miranda rights and agreed to waive those in writing. He thereafter made incriminating statements.

4. According to the testimony of Special Agent Kutz, he did not elicit any booking or background information from the defendant until after the defendant had waived his Miranda rights and after the defendant had completed explaining how and where he had acquired the $886.76 found in his wallet. ("However, Special Agent Kutz advised that in the chronology of events, the complained of question was not asked of Defendant prior to the inventory search and the Defendant's volunteered statements." Report and Recommendation, Page 6)

5. Defendant repeats in his Objection to the Report and Recommendation the same argument he raised before Magistrate Judge Cudmore, that the booking/background questioning could have elicited incriminating information about defendant's immigration status. ( "Since Agent Kutz knew that obtaining biographical information was probably going to uncover evidence which the United States could use to convict him of a crime, he knew that asking for the standard biographical information would, in this circumstance, be asking incriminating questions." Defendant's Objection, Paragraph 4) At the

3

evidentiary hearing, Defendant complained "that one of the standard questions to be asked by Special Agent Kutz in the booking process by ICE would have elicited an incriminatory response involving a technical misdemeanor immigration violation." Report and Recommendation, Page 6)

6.  Defendant seeks the suppression of all of his statements, including those properly given under Miranda, because the "the biographical information was probably going to uncover evidence which the United States could use to convict him of a crime," namely, the misdemeanor offense of being illegally in the United States. (Objection to Report and Recommendation, Paragraph 4.) But Defendant is not charged with that violation and his immigration status is not at issue relating to the charged crime, Unlawful Transportation of Aliens.

7.  Furthermore, this argument is a smoke screen or as Judge Cudmore referred to it, "a non factor" (Report and Recommendation, Page 6) because the chronology of events clearly shows that all of defendant's statements were made after he waived his Miranda rights, including his answers to the booking and background questions. Defendant's objections here center on the chronology of facts as presented in the hearing on the Motion to Suppress.

To support his argument, defendant distorts and/or ignores the evidence. Defendant asserts that his rights were violated when "police-initiated custodial

4

interrogation by starting to ask about biographical information which was clearly incriminating." (Objection, paragraph 6) This assertion is contrary to the testimony of Special Kutz and the factual findings made by Magistrate Judge Cudmore. (see Report and Recommendation, Page 5.)

All questioning of defendant commenced after he had waived his Miranda rights. The evidence was clear that the booking-type questioning was not started until after Special Agent Kutz found the money, after defendant attempted to make voluntary statements regarding the money, after he was re-advised of his Miranda rights, after he waived his rights, and after defendant made his statements regarding the money.

The defendant's rights were not violated. When he was asked about his immigration status as part of the booking/ministerial questioning by Special Agent Kutz, he had already waived his rights and agreed to speak to Special Agent Kutz.

8. Additionally, Special Agent Kutz repeatedly attempted to stop defendant from making any statements until he (Kutz) had an opportunity to again advise Defendant of his Miranda warnings. Defendant ignores this fact in claiming a violation of his rights.

9.     Defendant seeks suppression of statements, not based on an actual violation of his rights, but rather on an imagined and speculative one.  Magistrate Judge Cudmore is correct in  recommending that defendant's Motion to Suppress should be denied because defendant's rights were not violated.

10.    As stated above, the evidence is undisputed that Special Agent Kutz made repeated attempts to get the defendant to stop talking about the source of the money because of defendant's previous assertion of his right to remain silent. It was not after defendant persisted on talking, that Special Agent Kutz was able to convince him to remain silent long enough so that defendant could be re-advised of his Miranda rights. Defendant's attempted statements made after Special Agent Kutz found the money in defendant's wallet (as part of an inventory search of prior to transportation to the Sangamon County jail) and prior to his waiver of his Miranda rights, were volunteered and not the result of questioning by Special Agent Kutz,.

"Volunteered statements [however} of any kind are not barred by the Fifth Amendment." *United States v. Briggs*, 273 F. 3d 737, 740 (7th Cir. 2001); *United States v. DeRobertis*, 771 F.2d 1015 (7th Cir. 1985)

Where, as here, the defendant initiates a conversation with the police, they may ask further questions even though the suspect had previously invoked his

right to counsel. *United States v. DeRoberetis*, 771 F. 2d. at 1017. Because defendant volunteered statements, it would have been appropriate for Special Agent Kutz to listen and ask follow-up questions of defendant, all without violating defendant's rights. But here, Special Agent Kutz took extraordinary steps to protect defendant from incriminating himself. He repeatedly told defendant to be quiet, re-advised him of his rights and asked defendant if he was willing to waive those rights in writing, which defendant did. It was after that Special Agent Kutz listened to and questioned defendant about the source of the money, his trip to Illinois and personal and other ministerial matters.

11. There was no actual violation of defendant's rights against self-incrimination and right to counsel. Defendant's Motion to Suppress should be denied.

Wherefore, the United States prays for an order denying Defendant's Motion to Suppress.

Respectfully submitted,

JAN PAUL MILLER
UNITED STATES ATTORNEY

S/ Esteban F. Sanchez
Assistant United States Attorney
Attorney Bar No. 3123604
318 South 6th Street
Springfield, Illinois 62701
(217) 492-4450
Fax: (217) 492-4044
E-mail: esteban.sanchez@usdoj.gov

CERTIFICATE OF SERVICE

 I hereby certify that on February 28, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

 Douglas J. Beevers
 Attorney for Defendant

          S/ Esteban F. Sanchez
          Assistant United States Attorney
          Attorney Bar No. 3123604
          318 South 6th Street
          Springfield, Illinois 62701
          (217) 492-4450
          Fax: (217) 492-4044