IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-30008 |
| | ) | |
| MANUEL CASTRO-REYES, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Manuel Castro-Reyes' Motion to Suppress Statements for Miranda Violations (d/e 8)(Motion to Suppress), Magistrate Judge Byron G. Cudmore's Report and Recommendation on the Motion to Suppress, Defendant's Objection to the Report and Recommendation (d/e 12) (Objection) and Motion to Dismiss Indictment for Duplicity (d/e 13) (Motion to Dismiss Indictment). On January 6, 2005, Castro-Reyes was indicted on one count of unlawful transportation of aliens for commercial advantage or private financial gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (B)(i). Shortly thereafter, he filed the Motion to Suppress, which this Court referred to Judge

1

Cudmore for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  See <u>January 20, 2005 Text Order</u>.  Judge Cudmore entered his Report and Recommendation (d/e 10) on February 15, 2005, and Castro-Reyes filed his Objection on February 18, 2005.  On February 24, 2005, Castro-Reyes filed a Motion to Dismiss Indictment, in which he asks the Court to dismiss the indictment because it does not allege a separate count for each alien he is alleged to have transported.  For the reasons set forth below, the Court accepts and adopts Judge Cudmore's Report and Recommendation and denies the Motion to Suppress.  Castro-Reyes' Motion to Dismiss Indictment is also denied.

## BACKGROUND

On February 11, 2005, Judge Cudmore held an evidentiary hearing on the Motion to Suppress.  The Government called one witness, Special Agent Stuart Kutz of the Department of Homeland Security Immigration and Customs Enforcement (ICE).  The defense did not present any witnesses.  The following facts, which are undisputed, come from Special Agent Kutz's testimony.  See <u>Transcript of Proceeding held February 11, 2005 (d/e 18) (Transcript)</u>.  On December 6, 2004, Kutz was called to assist the Illinois State Police with a vehicle stop involving illegal aliens.  Castro-Reyes was

identified as the driver of the vehicle, and there were eleven other individuals in the vehicle at the time it was stopped. Kutz and another agent transported the twelve individuals from the vehicle to the ICE office in Springfield, Illinois.

Upon arriving at the office, Kutz presented Castro-Reyes with a Spanish language Miranda form. See Miranda v. Arizona, 384 U.S. 436 (1966). Kutz, who is proficient in Spanish, then read the Miranda rights to Castro-Reyes in Spanish. Kutz asked if Castro-Reyes understood his rights; Castro-Reyes replied in the affirmative. Kutz then asked Castro-Reyes if he wished to waive his rights, and Castro-Reyes stated, "No." Transcript, p. 9. Kutz stopped his questioning of Castro-Reyes, placed him in a detention cell, and started interviewing some of the eleven passengers.

Approximately three hours later, Kutz removed Castro-Reyes from the detention cell in order to ask him some biographical questions and to inventory his belongings in anticipation of transferring him to the Sangamon County (Illinois) jail. Kutz informed Castro-Reyes that he was going to ask him some biographical questions. Kutz instructed Castro-Reyes to take everything out of his pockets and to place his possessions on the desk. One of the items Castro-Reyes placed on the desk was his wallet.

3

Kutz opened the wallet to inventory the contents. There was approximately $80.00 in the regular bill section of the wallet. Kutz then discovered $800.00 in one of the wallet's side pockets. When Kutz found the $800.00 he stated "chingao," a Spanish expletive. After Kutz said "chingao," Castro-Reyes made statements to Kutz as to why he was in possession of the money. Kutz attempted to stop Castro-Reyes from speaking because he had not signed the Miranda waiver form. Kutz re-advised Castro-Reyes of his rights, and Castro-Reyes informed the agent that he wished to waive his rights and speak to him. Castro-Reyes signed the waiver form, and thereafter made incriminating statements in response to questioning by Kutz.

## ANALYSIS

A.   Motion to Suppress

Castro-Reyes argues that the incriminating statements should be suppressed because the Government improperly interrogated him after he invoked his Miranda rights. Judge Cudmore recommends that the Motion to Suppress be denied based on the fact that the statements were volunteered and because routine booking questions fall outside of Miranda. After reviewing the Motion to Suppress, the Government's Response to the

4

Motion (d/e 9), and the transcript of the evidentiary hearing, as well as Castro-Reyes' Objection and the Government's Response in Opposition to Defendant's Objection to the Report and Recommendation (d/e 16), the Court is convinced that Judge Cudmore's recommendation is correct.

Suspects must be advised of certain constitutional rights before being subjected to custodial interrogation. See Miranda, 384 U.S. at 444. The Government stipulates that, at all relevant times, Castro-Reyes was in-custody for Miranda purposes. The evidence is also clear that when Castro-Reyes was initially advised of his Miranda rights, he invoked them. "Once a suspect invokes the right to counsel, the police must cease all interrogation until counsel is present, unless the accused himself initiates further communication." United States v. Briggs, 273 F.3d 737, 740 (7th Cir. 2001) (citing Edwards v. Arizona, 451 U.S. 477, 484-85 (1981)). The analysis then hinges on whether Castro-Reyes was subjected to interrogation when Kutz removed him from the detention cell.

The Supreme Court has defined "interrogation" as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis,

5

446 U.S. 291, 300-01 (1980). The Seventh Circuit has articulated the proper test to be "'whether a reasonable objective observer would have believed that the . . . question[ ] claimed by [the defendant] to have been unlawful interrogation [was] in fact 'reasonably likely to elicit' an incriminating response.'" United States v. Abdulla, 294 F.3d 830, 834 (7th Cir. 2002) (quoting United States v. Westbrook, 125 F.3d 996, 1002 (7th Cir. 1997)). "If the accused makes a statement in response to some words or actions by the police that do not constitute interrogation, or if the accused himself initiates further communications, the police are not prohibited from 'merely listening' to his voluntary statement." Briggs, 273 F.3d at 740 (citing Edwards, 451 U.S. at 485).

The time-line in the present case is significant. Castro-Reyes initially began making statements to Kutz after Kutz uttered a Spanish expletive while inventorying Castro-Reyes' property. Kutz's exclamation cannot be characterized as a question that was reasonably likely to elicit an incriminating response. Castro-Reyes' statements in response to Kutz's exclamation were volunteered statements, and Kutz could have listened to the statements without violating the Constitution. See Briggs, 273 F.3d at 740. Kutz, however, stopped Castro-Reyes and again informed him of his

6

rights. Castro-Reyes agreed to waive his rights and speak to the agent. Therefore, any statements made after that time were the result of a valid waiver of rights by Castro-Reyes.

Castro-Reyes focuses his argument for suppression on his assertion that, in the present case, standard biographical booking questions would be incriminating because they could uncover evidence that Castro-Reyes had entered the United States illegally in violation of 8 U.S.C. § 1325. However, even assuming the standard booking questions would be reasonably likely to elicit an incriminating response from Castro-Reyes, Kutz did not ask Castro-Reyes any booking questions until after Castro-Reyes had reinitiated conversation through his volunteered statements and had waived his <u>Miranda</u> rights. There was no Constitutional violation, and the Motion to Suppress is denied.

B.   Motion to Dismiss Indictment

Castro-Reyes asks the Court to dismiss the indictment because it does not allege a separate count for each alien he is alleged to have transported. Castro-Reyes contends that, under <u>Apprendi v. New Jersey</u>, he has the right to have the jury determine the number of aliens who were unlawfully transported. See <u>Apprendi</u>, 530 U.S. 466 (2000). Castro-Reyes further

7

asserts that the indictment is duplicitous because it joins two or more distinct crimes in a single count. For the reasons set forth below, the Motion to Dismiss Indictment is denied.

Under 8 U.S.C. § 1324(a)(1)(B)(i), a defendant who is convicted of unlawfully transporting aliens for the purpose of commercial advantage or private financial gain faces a statutory maximum term of imprisonment of ten years "for each alien in respect to whom such a violation occurs." The number of aliens determines the statutory maximum sentence, and under Apprendi, Castro-Reyes is, therefore, entitled to have the number of aliens proved to a jury beyond a reasonable doubt. See United States v. Booker, 125 S.Ct. 738, 756 (2005) ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."). However, it does not necessarily follow that the alleged illegal transportation of each alien must be charged in a separate count. The Indictment alleges one core act of transporting aliens and puts Castro-Reyes on notice that the Government is seeking to hold him accountable for transporting six aliens. The Indictment, therefore, only alleges one crime and is not duplicitous. To

the extent Castro-Reyes seeks specific information about the jury's findings on the number of aliens that were transported, that could be accomplished through the use of special interrogatories or special verdict forms. The Motion to Dismiss Indictment is denied.

## CONCLUSION

The Court ACCEPTS and ADOPTS the Report and Recommendation (d/e 10) entered February 15, 2005. Castro-Reyes' Motion to Suppress Statements for Miranda Violations (d/e 8) and Motion to Dismiss Indictment for Duplicity (d/e 13) are DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: April 8, 2005.

FOR THE COURT:

                                    s/ Jeanne E. Scott
                                    JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE